Kimberley Hanks McGair, OSB #984205
kmcgair@fwwlaw.com
Kelly R. Tilden, OSB #014319
ktilden@fwwlaw.com
Farleigh Wada Witt
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

      Attorneys for Plaintiff


## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| EASYPOWER, LLC, an Oregon limited liability company, | Case No. |
|       Plaintiff, | COMPLAINT (Breach of Contract; Misappropriation of Trade Secrets; Breach of Fiduciary Duty; Interference with Contract/Prospective Economic Relations; Fraud; Federal Civil RICO - 18 USC § 1964) |
|       v. | |
| TECHNICAL DATA COLLECTION INC., an Oregon corporation; RON LEVASSEUR; TRACY SCHROCK; and ALEXANDER MAUREEN SCHROCK, | Jury Trial Requested |
|       Defendant. | |


Plaintiff, EasyPower, LLC alleges as follows:

### FACTS COMMON TO ALL CLAIMS

1.

Plaintiff EasyPower, LLC ("EasyPower") is an Oregon corporation with its

principal place of business in Washington County, Oregon.  EasyPower designs and sells

electrical software tools for designing, analyzing, and monitoring electrical power systems, and also performs engineering and project services for its customers.

2.

Defendant Technical Data Collection Inc. ("TDCI") is an Oregon corporation with its principal place of business in Clackamas County, Oregon.

3.

Defendants Ron Levasseur ("Levasseur"), Tracy Schrock ("T. Schrock") and Alexander Maureen Schrock ("Mo Schrock") reside in Clackamas County, Oregon.  Levasseur, T. Schrock and Mo Schrock (T. Schrock and Mo Schrock are collectively referred to herein as the "Schrocks") are principals of TDCI and are jointly and severally responsible for the actions of TDCI, as alleged herein.

4.

This Court has jurisdiction over this action pursuant to 28 USC § 1331 and 18 USC § 1964.  This Court has supplemental jurisdiction over the state law claims under 28 USC § 1367.  Venue is proper in this Court pursuant to 28 USC § 1391 because the causes of action described herein arose in Washington County, Oregon.

**EasyPower's Business & Levasseur's Employment**

5.

On or about February 9, 2015, EasyPower hired Levasseur to be its Senior Technical Sales Engineer.  In connection with his employment, Levasseur executed and delivered to EasyPower an Employee Agreement setting forth the terms and conditions of his employment ("Employee Agreement"), a true copy of which is attached hereto as Exhibit 1. Pursuant to the Employee Agreement, Levasseur agreed to devote his full business time and energy to EasyPower and further agreed not to disclose EasyPower's trade secrets, or to use

EasyPower's trade secrets for any reason other than in the performance of his job duties for EasyPower.

6.

On information and belief, following Levasseur's commencement of employment with EasyPower, and as a condition of Levasseur's continued employment by EasyPower, Levasseur executed and delivered to EasyPower a Nondisclosure/Nonsolicitation/Ownership of Inventions Agreement ("Non-Solicitation Agreement") pursuant to which Levasseur confirmed his obligation not to use or disclose any confidential or proprietary information belonging to EasyPower, and agreed not to solicit any customers or employees of EasyPower during the term of his employment with EasyPower and for the 24 months following termination of his employment with EasyPower.   A true copy of the Non-Solicitation Agreement EasyPower believes Levasseur executed is attached hereto as Exhibit 2.

7.

Levasseur was promoted to the Vice President of Sales of EasyPower on June 29, 2015. Levasseur voluntarily resigned his position with EasyPower on or about August 25, 2017, effective September 8, 2017.  Levasseur was relieved of any obligation to perform his duties for EasyPower on August 31, 2017.

8.

EasyPower has a number of trade secrets, as that term is defined in ORS 646.461(4), including, but not limited to, its software, its engineering services, the design and systems associated with its software and engineering services, its engineering services and know-how, its marketing strategies, its pricing strategies, its methods, research, processes, formulas, security measures, and its customer list and non-public information about its customers (collectively "Trade Secrets"). EasyPower's Trade Secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic value

Page 3 -    COMPLAINT

thereform.  EasyPower takes, and since at least 2015 has taken, reasonable steps to maintain the secrecy of its Trade Secrets.

9.

In his position at EasyPower, Levasseur had access to EasyPower's Trade Secrets.  Pursuant to the Employee Agreement and Non-Solicitation Agreement (collectively "Agreements"), Levasseur agreed not to use EasyPower's Trade Secrets for any purpose except the furtherance of EasyPower's business, and further agreed not to disclose EasyPower's Trade Secrets to any person or entity.

10.

EasyPower strictly controls the sale of its software.  It does not permit any person or entity to resell or assign its software or licenses thereto without EasyPower's express written consent.  EasyPower does not sell its software to its competitors, and it does not allow the assignment of its software except under very limited circumstances involving a merger or acquisition of a licensee.  Levasseur was well aware of these policies and restrictions.

11.

EasyPower also carefully controls the pricing of its software.  It does not discount its software except for select circumstances, including when a customer is converting from the software sold by EasyPower's competitors.  For customers converting from competitors, EasyPower occasionally offers its software at a discounted price.  EasyPower informed Levasseur of this policy early in his employment and he was well aware of this restriction throughout the remainder of his employment.

**Levasseur & TDCI's Improper Purchase and Sale of EasyPower's Software**

12.

On or about June 29, 2015, Levasseur and T. Schrock incorporated TDCI. Levasseur's incorporation of TDCI was a breach of the Employee Agreement because Levasseur

was required to devote his work solely to the benefit of EasyPower. Levasseur did not disclose to his supervisors at EasyPower that he was an incorporator, owner or in any way affiliated with TDCI.

13.

On December 15, 2015, Levasseur created a quote from EasyPower to TDCI for EasyPower's software ("Original Quote").  The Original Quote contains the following language:

> EasyPower makes all software referred to in this quote available to customers exclusively pursuant to the terms of EasyPower's license agreement [a copy of which is available upon request]. EasyPower's acceptance of any purchase order for EasyPower software is expressly conditioned on customer's agreement that notwithstanding any terms to the contrary contained in any purchase order issued by customer: (a) Customer will become a party to and be bound by the license agreement for all EasyPower software and (b) The license agreement shall be the sole and exclusive agreement between the parties governing customer's use of the EasyPower software and the rights of the parties therein, including all intellectual property rights.

14.

On February 11, 2016, using EasyPower's computer systems and competitor invoices that EasyPower had received from other customers to support the discount EasyPower occasionally offered to existing customers of competitors, Levasseur created a false invoice from a competitor to TDCI dated January 9, 2014, to create the appearance that TDCI had been invoiced and paid the competitor a maintenance fee of $1,500.  TDCI did not exist in January 2014 and, on information and belief, TDCI never purchased software from, or paid any maintenance fee to, this competitor.  This false invoice was created solely for the purpose of defrauding EasyPower.  Using his EasyPower email address, Levasseur emailed the false competitor invoice to his personal email.

15.

On that same day, again using EasyPower's computer systems, Levasseur created a purchase order from TDCI to EasyPower for the EasyPower software which included the discounted purchase price of $1,500.  Using his EasyPower email address, Levasseur emailed the TDCI purchase order to his personal email.

16.

On February 11, 2016, Mo Schrock of TDCI sent the false competitor invoice identified in paragraph 14, above, and the TDCI purchase order referred to in paragraph 15 above, via email to Levasseur at his EasyPower email address to purchase the discounted software.  On February 12, 2016, Levasseur sent those same documents to an EasyPower Sales Assistant via email for processing.

17.

On February 12, 2016, at Levasseur's direction, EasyPower employees with no knowledge of Levasseur's role in TDCI, or the fraudulent nature of the competitor invoice to TDCI, created an invoice from EasyPower to TDCI for the EasyPower software, reflecting a discount that is available only to new customers who are transitioning from competitor software to EasyPower software.   Levasseur caused EasyPower to transfer the EasyPower software, License F2-92322-7A ("License 1") to TDCI.  Pursuant to the Original Quote, TDCI's issuance, and EasyPower's acceptance, of the purchase order identified in paragraphs 15 and 16, above, and/or by TDCI's installation of the EasyPower software on its computers, TDCI accepted and agreed to abide by the EasyPower License Agreement ("EULA"), a true copy of which is attached hereto as Exhibit 3.

18.

On or about April 15, 2016, TDCI purported to transfer License 1 to Weatherford International, Inc., and communicated this purported transfer to Levasseur via email.   This

Page 6 -    COMPLAINT

transfer violated the EULA and was both a breach of the EULA and ineffective because the only EasyPower representative who consented to the transfer was Levasseur and Levasseur did not have authority to consent to this transfer of License 1 because the transfer violated EasyPower's policies.  Levasseur and TDCI had actual knowledge that the transfer of License 1 violated EasyPower's policies and was not within Levasseur's actual authority.    Weatherford International, Inc. paid TDCI consideration in exchange for the transfer of License 1.

19.

On or about August 9, 2016, TDCI issued a second purchase order to EasyPower to purchase EasyPower's software at a $5,000 discount.  Mo Schrock of TDCI sent a purchase order for this software to Levasseur at Easy Power.  Levasseur directed EasyPower's Sales Assistant, via email, to process the purchase order.  On August 10, 2016, EasyPower issued an invoice to TDCI, as directed by Levasseur, for $5,000, reflecting a $5,000 discount.  EasyPower did not consent to this sale of its software to TDCI, did not agree to a sale at the discounted price, and Levasseur did not tell EasyPower about his relationship with TDCI in connection with this sale.

20.

On August 30, 2016, TDCI issued a Notice of Assignment, assigning its rights to License Number K2-62974-2G ("License 2") to Siemens in Kansas, and sent the purported assignment to Levasseur at EasyPower via email.  This transfer violated the EULA and was both a breach of the EULA and ineffective because the only EasyPower representative who consented to the transfer was Levasseur and Levasseur did not have authority to consent to this transfer of License 2 because the transfer violated EasyPower's policies.  Levasseur and TDCI had actual knowledge that the transfer of License 2 violated EasyPower's policies and was not within Levasseur's actual authority.  Siemens paid TDCI consideration in exchange for the transfer of License 2.

Page 7 -    COMPLAINT

21.

On or about August 30, 2016, TDCI issued another purchase order to EasyPower for two licenses of its EasyPower software and one license of its OnSite software. Levasseur caused EasyPower to fulfill this purchase order. Levasseur communicated with Mo Schrock of TDCI regarding this purchase via email.

22.

On or about August 31, 2016, Levasseur caused EasyPower to issue an invoice to TDCI for $5,250, representing the sale of two additional licenses of the EasyPower software, and one license of the OnSite software, all at a significant discount. Levasseur caused EasyPower to transfer two additional licenses (License Numbers D2-75726-1L & A2-96638-4B) ("Licenses 3 and 4") to its software, and one license for its OnSite software (License Number A2-74478-1E) ("OnSite License"), to TDCI. This sale violated EasyPower's policies and was, therefore, beyond Levasseur's actual authority. Levasseur and TDCI knew that the sale violated EasyPower's policies. Consequently, both the sale and the discount reflected on the invoice were neither authorized nor agreed to by EasyPower.

23.

On September 13, 2016, Levasseur caused EasyPower to issue an invoice to TDCI for $3,000, representing the sale of two additional licenses at a significant discount. Levasseur caused EasyPower to transfer two additional licenses (License Numbers Q2-84392-7J & B2-18853-3G) ("Licenses 5 and 6") of its software to TDCI. This sale violated EasyPower's policies and was, therefore, beyond Levasseur's actual authority. Levasseur and TDCI knew that the sale violated EasyPower's policies. Consequently, both the sale and the discount reflected on the invoice were neither authorized nor agreed to by EasyPower. TDCI paid for Licenses 5 and 6 via a credit card which was processed via a telephone call from TDCI to EasyPower.

24.

On May 9, 2017, Levasseur caused EasyPower to issue a quote to TDCI for twelve unlimited licenses to EasyPower's software at a discount of $126,000. Levasseur sent this quote to TDCI via email. On June 28, 2017, Levasseur sent an email to Mo Schrock of TDCI stating that the quote sent on May 9, 2017, was extended for a period of 270 days. Levasseur did not have authority from EasyPower to offer this discount or quote to TDCI because the quote and discount violated EasyPower's policies because they were made to a competitor, Levasseur had not disclosed his relationship with TDCI and because Levasseur had falsely represented to the President of EasyPower that he was offering the same, full price quote to all parties bidding on a specified contract, when, in fact, he offered this massive discount to TDCI.

25.

As a result of TDCI's and Levasseur's wrongful purchase, use and assignment of EasyPower's software, EasyPower has been damaged in a sum not less than $90,250.

### Levasseur's and TDCI's Improper Diversion of EasyPower's Engineering Services Projects

26.

In addition to providing its software modules, EasyPower also provides engineering services to its customers. During the course of his employment with EasyPower, inquiries for engineering services from customers and prospective customers were directed to Levasseur, as the Vice President of Sales for EasyPower.

27.

Beginning in October 2015, Levasseur began a campaign of diverting opportunities for EasyPower to provide engineering services to its customers to TDCI. Levasseur's conduct included, but is not limited to, the following:

a.    Levasseur forwarded emails received from potential customers and prospects who were requesting bids on engineering services to Levasseur's personal email

Page 9 -    COMPLAINT

account, in violation of the Agreements.

    b.    Levasseur prepared and submitted bids to customers and prospective customers on behalf of EasyPower that were intentionally high, and subsequently prepared and submitted bids by TDCI that deliberately undercut EasyPower's bids.  For example, Levasseur provided a bid to an EasyPower customer for engineering services for $79,000, and then TDCI subsequently provided a bid to the same customer for the same services for $69,000.

    c.    Levasseur falsely represented to customers and prospective customers that EasyPower and TDCI were partners or otherwise working together.

    d.    Levasseur directed EasyPower employees to provide services and information to him, which TDCI then used to compete with EasyPower.

    e.    Levasseur failed to either prepare bids for EasyPower in response to requests from customers and prospective customers, failed to conduct required site visits and/or failed to send bids prepared by EasyPower to customers and prospective customers, instead permitting only TDCI to bid on the prospective project.

    f.    Levasseur directed a representative of EasyPower to generate engineering services work for TDCI, and directed the EasyPower representative to use a system paid for by EasyPower to generate this work for TDCI.

    g.    Levasseur directed a third party to perform work for TDCI at EasyPower's expense.

28.

    Levasseur's diversion of TDCI's customers and prospective customers, as outlined above, was committed using EasyPower's email systems.  In particular, Levasseur diverted emails to TDCI by emailing customer inquiries received by EasyPower to his personal email; Levasseur transmitted bids (including fraudulently high bids he prepared on behalf of EasyPower) via email; and Levasseur communicated with EasyPower's customers and

prospective customers via email.

29.

Levasseur and TDCI could not provide many of the engineering services that they have offered and performed without the use of EasyPower's software, which TDCI obtained through fraudulent means, as explained in paragraphs 12 through 25, above.

30.

As a result of TDCI and Levasseur's improper diversion of EasyPower's opportunity to perform engineering services, EasyPower has been damaged as detailed below.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract - Against Levasseur Only)

31.

EasyPower realleges the allegations set forth in paragraphs 1 through 30 and incorporates them herein by reference.

32.

Levasseur's conduct, as alleged in paragraphs 12 through 30, constitutes a breach of the Agreements.

33.

EasyPower has suffered damages in a sum not less than $161,789 as a result of Levasseur's breach of the Agreements.

34.

Pursuant to the Employee Agreement, EasyPower is entitled to recover its attorneys' fees and costs incurred herein from Levasseur.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract / Specific Performance - Against TDCI Only)

35.

EasyPower realleges the allegations set forth in paragraphs 1 through 30 and incorporates them herein by reference.

36.

TDCI agreed to the terms of the EULA when it received quotes for EasyPower's software from EasyPower, issued purchase orders for EasyPower's software to EasyPower and/or when it installed the EasyPower software on its computers.  The EULA provides that EasyPower is permitted to terminate the licenses to the EasyPower software ("Licenses") if EasyPower determines, in its reasonable judgment, that TDCI failed to comply with the terms, conditions and obligations under the EULA.

37.

TDCI breached the EULA by reselling and assigning EasyPower's software to Weatherford International, Inc. and Siemens, as alleged in paragraphs 18 and 20, above.  TDCI also breached the representation it made in the EULA that it was not a direct competitor of EasyPower.  EasyPower has determined, in its reasonable judgment, that TDCI failed to comply with certain terms, conditions and obligations under the EULA, including, but not limited to, the competitor limitation, the non-transferability and non-assignment provisions of the EULA.  As a result, and pursuant to Section 3.3 of the EULA, EasyPower terminated TDCI's rights to use the Licenses.

38.

EasyPower has also terminated TDCI's right to use the Licenses on the grounds that TDCI obtained the EasyPower software by false pretenses as alleged in paragraphs 12 through 25, above.

Page 12 -   COMPLAINT

39.

Pursuant to Section 3.4 of the EULA, TDCI must cease all use of EasyPower's Software and associated Deliverables (as those terms are defined in the EULA), including all copies, and must return all Deliverables, including, but not limited to, the physical USB license keys for all of the Licenses, along with all printed materials and documentation, to EasyPower.

40.

On or about September 13, 2017, EasyPower notified TDCI that it had terminated the licenses as outlined above and permitted by the EULA, and demanded that TDCI cease all use of the Software and the Software and Deliverables to TDCI.  TDCI has failed and refused to return the Software and Deliverables to EasyPower.

41.

EasyPower is entitled to a judgment from this Court requiring TDCI to specifically perform the EULA and return the Software and Deliverables to EasyPower. EasyPower has no adequate remedy at law.

42.

EasyPower has been damaged in an amount to be proven at trial by TDCI's breach of the EULA.

43.

Pursuant to the EULA, EasyPower is entitled to collect its attorneys' fees and costs incurred herein from TDCI.

### THIRD CLAIM FOR RELIEF

### (Misappropriation of Trade Secrets - Against All Defendants)

44.

EasyPower realleges the allegations set forth in paragraphs 1 through 30 and incorporates them herein by reference.

Page 13 -   COMPLAINT

45.

Levasseur's, TDCI's and the Schrocks' conduct, as described above, constitutes misappropriation of EasyPower's Trade Secrets under ORS 646.641, *et seq*.

46.

EasyPower has suffered damages as a result of defendants' misappropriation of its Trade Secrets in an amount to be proven at trial, but not less than $161,789.

47.

Pursuant to ORS 646.463, EasyPower is entitled to both a temporary and permanent injunction prohibiting defendants from continuing to misappropriate and/or use EasyPower's Trade Secrets.

48.

Defendants' conduct in misappropriating EasyPower's trade secrets was willful and/or malicious under ORS 646.465, and EasyPower is entitled to recover punitive damages.

49.

Pursuant to ORS 646.467, EasyPower is entitled to recover it attorneys' fees and costs herein from defendants.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty - Against Levasseur Only)

50.

EasyPower realleges the allegations set forth in paragraphs 1 through 30 and incorporates them herein by reference.

51.

As an employee of EasyPower, Levasseur owed EasyPower a fiduciary duty during the course of his employment with EasyPower which required that Levasseur act for the

benefit of EasyPower, not for his own personal benefit, or the benefit of his affiliates, while he was employed with EasyPower.

52.

Levasseur's conduct, as described in paragraphs 12 through 30, above, constitutes a breach of his fiduciary duty to EasyPower, including the sale of EasyPower's software at improper discounts, the disclosure of EasyPower's Trade Secrets and the improper diversion of EasyPower's opportunities to sell its engineering services and its software to its customers and prospective customers.  In committing all of these actions, Levasseur acted solely for his own personal benefit, to the significant detriment of EasyPower.

53.

As a result of Levasseur's breach of his fiduciary duty, EasyPower has been damaged in the sum of not less than $161,789.

**FIFTH CLAIM FOR RELIEF**

**(Interference with Contract/ Prospective Economic Relations - Against All Defendants)**

54.

EasyPower realleges the allegations set forth in paragraphs 1 through 30, above, and incorporates them herein by reference.

55.

Defendants' conduct, as particularly alleged in paragraphs 12 through 30, above, interfered with EasyPower's relationships with its customers and prospective customers.

56.

Defendants' interference with EasyPower's contracts with its customers and its prospective economic relationships was committed for the improper purpose and/or improper motive of diverting economic opportunities directed to and owned by EasyPower to defendants for defendants' economic benefit.

Page 15 -   COMPLAINT

57.

EasyPower was damaged by defendants' interference with its contracts and prospective economic relationships in an amount to be proven at trial, but not less than $161,789.

## SIXTH CLAIM FOR RELIEF

### (Fraud - Against All Defendants)

58.

EasyPower realleges the allegations set forth in paragraphs 1 through 30 and incorporates them herein by reference.

59.

Defendants' representations to EasyPower regarding TDCI's purchase of a competitor's software and payment of a maintenance fee to a competitor were false statements of fact.  TDCI's representation in the EULA was also a false statement of fact.  Defendants knew that their above-referenced representations were false when they made them, and they made the representations with the intent that EasyPower would rely upon them.

60.

EasyPower was ignorant of the falsity of defendants' representations, and EasyPower had a right to rely upon defendants' representations.

61.

EasyPower has been damaged in an amount to be proven at trial, but not less than $161,789 as a result of defendants' fraudulent representations.

62.

Defendants' fraudulent representations were willful and malicious.  EasyPower is entitled to recover punitive damages.

## SEVENTH CLAIM FOR RELIEF

### (Federal Civil RICO - Against All Defendants)

63.

EasyPower realleges the allegations set forth in paragraphs 1 through 30 and incorporates them herein by reference.

64.

Defendants fabricated a scheme to intentionally deceive and defraud EasyPower by creating fraudulent invoices that purported to be issued by a competitor, by representing TDCI to be an independent entity that was not a competitor of EasyPower, by failing to disclose that TDCI was owned and/or operated by Levasseur and T. Schrock, by failing to disclose that TDCI intended to transfer the Licenses it obtained from EasyPower to other entities in violation of the EULA and EasyPower's policies, by failing to disclose that TDCI intended to use the Licenses to compete with EasyPower, by diverting business inquiries and opportunities directed to EasyPower without EasyPower's or the customer's knowledge or consent and by misrepresenting the relationship between EasyPower and TDCI.

65.

In furtherance of the fraudulent scheme and using interstate wires, defendants sent the fraudulent competitor invoice, and numerous purchase orders from TDCI which were based on the false representation that TDCI was entitled to a significant discount on the purchase price of EasyPower's software because TDCI was converting from a competitor's software via email to EasyPower.  Defendants also sent the software and USB license keys to customers via the U.S. Postal Service or other interstate carrier.  At all times, defendants intended to deceive and defraud EasyPower by obtaining its software at significant discounts to which defendants were not entitled, and by diverting its corporate opportunities without authority.

Page 17 -   COMPLAINT

66.

The defendants have engaged on two or more occasions in the use of the United States mail and/or use of United States interstate wires for the purpose of executing the fraudulent scheme described in paragraphs 63 and 64, above.  Defendants' actions, as alleged above, constitute a pattern of "racketeering activity," as that term is defined in 18 USC § 1961(1)(B), and violate 18 USC § 1962.   TDCI is an "enterprise" as that term is defined in 18 USC § 1961(4).

67.

EasyPower has been damaged by defendants' fraudulent scheme and pattern of racketeering activity, as described above. Pursuant to 18 USC § 1964, EasyPower is entitled to recover its actual damages from defendants in a sum not less than $161,789, plus treble damages.

68.

Pursuant to 18 USC § 1964, EasyPower is entitled to recover its attorneys fees and costs incurred herein.

**JURY TRIAL REQUESTED**

69.

Pursuant to Fed. R. Civ. P. 38(b), plaintiff hereby demands a trial by jury.

WHEREFORE, EasyPower LLC prays for judgment in its favor and against defendants as follows:

1.      On its First and Fourth Claims for Relief, for a judgment against defendant Levasseur in an amount to be proven at trial, but not less than $161,789, plus interest on that sum at the statutory rate of 9% from the date of loss until paid in full;

2.      On its Third, Fifth and Sixth Claims for Relief, for a judgment against all defendants jointly and severally in an amount to be proven at trial, but not less than $161,789, plus interest on that sum at the statutory rate of 9% from the date of loss until paid in full;

3.    On its Second Claim for Relief, for a judgment against TDCI for an amount to be proven at trial, and for a judgment for specific performance requiring that TDCI return EasyPower's software and associated deliverables, including all USB keys and documents, to EasyPower;

4.    On its Seventh Claim for Relief, for a judgment against all defendants jointly and severally in an amount to be proven at trial, but not less than $161,789, plus interest on that sum at the statutory rate of 9% from the date of loss until paid in full, plus treble damages;

5.    On its Third Claim for Relief, for an injunction prohibiting defendants from using or disclosing EasyPower's Trade Secrets;

6.    For a judgment against all defendants, jointly and severally, for its attorneys fees and costs incurred herein; and

7    For such other relief as the Court deems just and equitable.


DATED this 6th day of October, 2017.


FARLEIGH WADA WITT


By:  /s/ Kimberley Hanks McGair
        Kimberley Hanks McGair, OSB #984205
        Kelly R Tilden, OSB #014319
        (503) 228-6044
        kmcgair@fwwlaw.com
        ktilden@fwwlaw.com
        Attorneys for Plaintiff